# UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# GREENVILLE DIVISION

| | |
|---|---|
| **David Oppenheimer, Plaintiff,** § | |
| § | |
| **v.** § | |
| § | Civil Action No.: 6:19-cv-03274-TMC |
| **Friends of the Greenville Zoo, Inc.,** § | |
| **Amanda Harley Allen;** *and* § | |
| **Perfect Pitch Productions, LLC** § | |
| Defendants. § | **JURY DEMANDED** |

## PLAINTIFF'S FIRST AMENDED COMPLAINT FOR COPYRIGHT INFRINGEMENT

Plaintiff, David Oppenheimer ("Oppenheimer" or "Plaintiff"), has sued Defendants, **Greenville Zoo Educational Foundation, Inc. ("GZEF"); Friends of the Greenville Zoo, Inc. ("ZOO"), WSPA, LLC ("WSPA");** *and* **Nexstar Broadcasting, Inc. ("Nexstar"); (collectively, "Defendants")**, and facts learned in discovery dictate that some pleading should be clarified, and additional defendants named – Amanda Harley Allen ("Harley-Allen") and Perfect Pitch Productions, LLC ("Perfect Pitch"):

## JURISDICTION/VENUE

1. Oppenheimer's claims arise under the copyright laws of the United States, 17 U.S.C. 101 *et. seq.*, (hereinafter the Copyright Act.).

2. Subject matter and personal jurisdiction is vested in this Court pursuant to 28 U.S.C. 1338. Additionally, this Court has subject matter jurisdiction under 28 U.S.C. 1331 inasmuch as this claim arises under the copyright laws of the United States. Venue in this judicial district is proper pursuant to 28 U.S.C. 1400(a) and 28 U.S.C. 1391(b) and (c).

## THE PARTIES

3.     Plaintiff is a citizen of North Carolina engaged in the business of professional photography and resides in and has a principal place of business in Asheville, Buncombe County, North Carolina.

4.     GZEF is a corporation organized under the laws of the State of South Carolina. GZEF has been sued, has answered, and was dismissed by Plaintiff with prejudice.

5.     ZOO is a corporation organized under the laws of the State of South Carolina has been sued, has answered, and has joined discovery.

6.     Nexstar is a corporation organized under the laws of the State of Delaware that owns the television station WSPA-TV ("WSPA"). Nexstar has been sued, has answered, has resolved Plaintiff's complaints, and was dismissed by Plaintiff with prejudice.

7.     Harley Allen is a principal of Perfect Pitch Productions LLC, and she will receive notice of this suit by service on her at 203 MOLANO CT, GREENVILLE, SC 29607-6415.

8.     Perfect Pitch is limited liability company organized under the laws of the State of South Carolina and will receive notice of this suit by service upon its registered agent, Amanda Harley Allen, at 203 MOLANO CT, GREENVILLE, SC 29607-6415.

## INTRODUCTORY FACTS

9.     Oppenheimer is a professional photographer, and is the author (photographer) of, and at all times relevant to this claim, has been and is now the sole owner and proprietor of all right, title and interest in and to the copyrights in the photograph at issue in this matter (the "Work" **Exhibit 1**).

10. Oppenheimer makes his photographic works available for perusal and licensing online at his website http://www.performanceimpressions.com.

11. Oppenheimer has complied in all respects with Title 17, U.S.C. § 102, *et seq.,* and all other laws governing federal copyright applicable to the Work and registered the copyrights with the Register of Copyrights at the U.S. Copyright Office. Attached hereto as **Exhibit 2** are true and correct copies of the certificate of registration and the deposit photograph for the registration certificate entitled "*Unpublished Concert Photography Summer-Fall 2011,*" bearing certificate number VAu 1-080-482.

12. At all relevant times hereto, Oppenheimer has and continues to be the sole owner of all rights, titles, and interests in and to the above-mentioned registrations and photographic Work. Oppenheimer's copyrights in the above-described Work are presently valid and subsisting, were valid and subsisting from the moment of the Work's creation, and all conditions precedent to the filing of this suit have occurred.

13. For many years, it has been Oppenheimer's custom and business practice to display his copyright management information ("CMI") on his copyrighted photographs when they are first published by him, and thereafter. When published by Oppenheimer, the Work at issue in this case prominently displayed his CMI in the caption, with a facial watermark, and embedded in the metadata of the Work. Thus, Defendants were on notice that the Work was copyright-protected.

14. Fewer than three years before this filing, Oppenheimer discovered that one or more of the Defendants, or someone at their direction, infringed his copyrights by uploading, distributing, and/or publishing (or directing others to do so) his protected image on the website, wspa.com, on at least two different pages, both titled "Zoo Tunes with Bruce Hornsby" for the purpose of advertising and marketing Zoo, as well as the station WSPA and its parent corporation,

Nexstar. See **Exhibit 3**.

15.    During the written discovery phase, Oppenheimer learned that in April of 2016, ZOO hired Harley-Allen and Perfect Pitch to "provide certain media relations and marketing services in connection with ZooTunes." **See Exhibit 5**. Oppenheimer also discovered that in October of 2016, Harley-Allen and Perfect Pitch contacted an employee of the WSPA television station, and agreed to appear on WSPA's Your Carolina television program – along with ZOO's executive director – on behalf of ZOO to promote the Zoo Tunes event. **See Exhibit 6**. In an email communication dated November 2, 2016, Harley-Allen and Perfect Pitch also stated that she would – on behalf of ZOO – "send photos and logos later this week." **See Exhibit 6**. Oppenheimer also discovered that Harley-Allen and Perfect Pitch, on behalf of ZOO, completed a "Your Carolina program content worksheet" which stated that ZOO would "provide pictures" for the to-be-televised segment (Item 17) promoting the event, *and* dictated the exact verbiage ("ad copy") that ultimately appeared on the infringing photograph (**Exhibit 3**)[1] aired on the promotional segment (Item 14). See **Exhibit 7**. Moreover, in an email communication dated November 4, 2016, on behalf of ZOO, Harley-Allen and Perfect Pitch sent the WSPA employee several links to Facebook photo albums, and images on Google Drive. **See Exhibit 8**.

16.    Then, one or more of the Defendants, broadcasted an unauthorized copy of the Work on the Your Carolina television program and subsequently used and/or displayed it on *(at least)* the following URLs:

- http://wspa.com/2016/11/07/zoo-tunes-with-bruce-hornsby/;
- https://www.wspa.com/entertainment/your-carolina/zoo-tunes-with-bruce-hornsby/896766217;

---

[1] "*Zoo Tunes, featuring a solo performance by Bruce Hornsby / November 10, 2016 7pm / Greenville Zoo / www.zootunes.eventbrite.com*" **See Exhibit 3 and Exhibit 7 (item 14)**.

4

- https://www.wspa.com/entertainment/your-carolina/zoo-tunes_20180102072002394/896286415;
- https://media.wspa.com/nxs-wspatv-media-us-east1/photo/2016/11/07/992A1C1C03B1419D9FF4C4CE913EE2C5_30958765_ver1.0_1280_720.jpg;
- https://mgtvwspa.files.wordpress.com/2016/11/992a1c1c03b1419d9ff4c4ce913ee2c5.jpg;
- https://media.wspa.com/nxs-wspatv-media-us-east1/photo/2016/11/07/992A1C1C03B1419D9FF4C4CE913EE2C5_30958765_ver1.0_160_90.jpg; *and*
- https://media.wspa.com/nxs-wspatv-media-us-east1/photo/2016/11/07/992A1C1C03B1419D9FF4C4CE913EE2C5_30958765_ver1.0_640_360.jpg

17.     Upon information and belief, one or more of the Defendants, or someone at their direction, located and accessed Oppenheimer's Work at http://www.performanceimpressions.com, downloaded the work, and then uploaded it to the webpage to advertise and promote the Zoo. Additionally, despite the fact that Oppenheimer prominently displayed his CMI in the caption, with a facial watermark, and embedded in the metadata of the Work, when Defendants published the Work without authorization on the webpage, Oppenheimer's CMI had been removed and replaced by the false-designation "*Zoo Tunes, featuring a solo performance by Bruce Hornsby / November 10, 2016 7pm / Greenville Zoo / www.zootunes.eventbrite.com*" and "*Your Carolina.*" **Exhibit 3**.

18.     On or about April 29, 2019, Oppenheimer's attorney sent a formal letter identifying the infringing URLs demanding Defendants cease and desist from their ongoing infringement, and seeking information about the uses to which the work had been put, profits received, and the like (**Exhibit 4**). In May of 2019, after acknowledging receipt of Oppenheimer's formal letter, Defendants failed and/or refused to remove all instances of infringement displayed on the website wspa.com. One or more of the Defendants continued to use and/or display the Work on (at least)

5

the following URLs:

- https://media.wspa.com/nxs-wspatv-media-us-east-1/photo/2016/11/07/992A1C1C03B1419D9FF4C4CE913EE2C5_30958765_ver1.0_1280_720.jpg;

- https://media.wspa.com/nxs-wspatv-media-us-east-1/photo/2016/11/07/992A1C1C03B1419D9FF4C4CE913EE2C5_30958765_ver1.0_160_90.jpg; *and*

- https://media.wspa.com/nxs-wspatv-media-us-east-1/photo/2016/11/07/992A1C1C03B1419D9FF4C4CE913EE2C5_30958765_ver1.0_640_360.jpg.

19.     After repeated demands by Oppenheimer -- these additional instances of known infringement(s) were eventually terminated, and suit was filed.

6

## CAUSES OF ACTION

### COUNT I – NON-WILLFUL COPYRIGHT INFRINGEMENT

20. Oppenheimer re-alleges and incorporates paragraphs 1 – 19 above as if recited *verbatim*.

21. One or more of the Defendants have non-willfully infringed Oppenheimer's copyrights in and to the Work shown on **Exhibit 1** by scanning, copying, reproducing, distributing, publishing and/or otherwise using, unauthorized copies of said photograph within the United States in violation of Title 17.

22. Upon information and belief, Defendants have benefitted from infringements of the Work, while Oppenheimer has suffered and will continue to suffer monetary damages, irreparable injury to his business, reputation, and goodwill, and dilution in the marketplace; therefore, Oppenheimer is entitled to injunctive relief, damages, and other relief set forth in the Title 17.

### COUNT II – RECKLESS/WILLFUL COPYRIGHT INFRINGEMENT

23. Oppenheimer re-alleges and incorporates paragraphs 1 – 22 above as if recited *verbatim*.

24. Alternatively, one or more of the Defendants have recklessly/willfully infringed Oppenheimer's copyrights in and to the Work shown on **Exhibit 1** by scanning, copying, reproducing, distributing, publishing and/or otherwise using, unauthorized copies of said photograph within the United States in violation of Title 17.

25. As is his pattern and practice, Oppenheimer had clearly marked the Work -- both on the face of the image in legible caption, and in the metadata -- with his CMI, including a © notice of copyright, stating that all rights are reserved, including instructions, Oppenheimer's address, phone number, email, and website URL. Oppenheimer does this to distinguish his Works

from the works of others in his field, to provide a way for potential licensees to contact him for purchasing licenses, as well as to ensure that anyone who merely views his Works appreciates that he owns all rights and title in them.

26. Upon information and belief, one or more of the Defendants, or a third party acting on one or more of their behalves, saw Oppenheimer's copyright notice on the face of the image prior to scraping it from the World Wide Web, and uploading it to the wspa.com website. Further, one or more of the Defendants, or someone on one or more of their behalves, removed Oppenheimer's copyright notice from the face of the Work, as well as all of his CMI from within its metadata, and replaced it with the false-designations "*Zoo Tunes, featuring a solo performance by Bruce Hornsby / November 10, 2016 7pm / Greenville Zoo / www.zootunes.eventbrite.com*" and "*Your Carolina*" before uploading and distributing it. **Exhibit 3**. Therefore, because they had the opportunity to appreciate that Oppenheimer was the sole author and owner of the Work, and still used it without license or authorization, Defendants recklessly/willfully infringed the Work.

27. Upon information and belief, one or more of the Defendants have benefitted from their infringements of the Work, while Oppenheimer has suffered and will continue to suffer monetary damages, irreparable injury to his business, reputation, and goodwill, and the work has suffered dilution in the marketplace; therefore, Oppenheimer is entitled to injunctive relief, damages (including disgorgement of Defendants' profits), and other relief set forth in the Act.

### COUNT III.
### VIOLATIONS OF THE DIGITAL MILLENNIUM COPYRIGHT ACT

28. Oppenheimer re-alleges and incorporates paragraphs 1 – 27 above as if recited *verbatim*.

29. As is his pattern and practice, Oppenheimer clearly marked the Work with his CMI

on the face of the images, in legible captions just below the image, and within the metadata of the image. Oppenheimer's facial CMI always includes a "©" or the word "Copyright" in the lower right corner of Works he publishes; CMI in the metadata always includes proper notices of copyright, and notices declaring "All Rights Reserved" in addition to instructions, Oppenheimer's address, phone number, email, and the Performance Impressions website URL. Oppenheimer does all this to distinguish his works from others, as well as to ensure that people who view his Works appreciate that he owns all rights and title to them. On information and belief, one or both of the Defendants, or third parties at their direction and behest (additional discovery will reveal which), violated the DMCA by removing Oppenheimer's CMI.

30. In accomplishing the infringements identified above, and upon information and belief, one or more of the Defendants, or a third party at their behest, intentionally removed and/or cropped-off the CMI from the face of Oppenheimer's Work, and replaced it with the false-designations "*Zoo Tunes, featuring a solo performance by Bruce Hornsby / November 10, 2016 7pm / Greenville Zoo / www.zootunes.eventbrite.com*" and "*Your Carolina*" before uploading and distributing it. **Exhibit 3**.

31. Upon information and belief, one or more of the Defendants distributed copies and/or derivatives of Oppenheimer's Work knowing that such CMI had been cropped-off the face of it or had been otherwise removed, all without authorization. Upon information and belief, one or more of the Defendants distributed copies and/or derivatives of Oppenheimer's Work knowing that it displayed false CMI, without authorization.

32. At the time that Oppenheimer's CMI was cropped-off or otherwise removed from his Work and replaced with false CMI, and at the time the Work was distributed having had its CMI cropped-off or removed, and replaced with false CMI, Defendants knew or had reasonable

9

grounds to know that such behavior would induce, enable, facilitate, and/or conceal infringements of Oppenheimer's copyrights.

33. Oppenheimer is entitled to and seeks recovery of statutory damages from Defendants not less than $2,500, and not exceeding $25,000 for each act committed in violation of his rights under 17 U.S.C. § 1203(c)(3)(B).

34. Pursuant to 17 U.S.C. § 1203(b)(5), Oppenheimer is entitled to recover, and therefore seeks the recovery of his Lodestar costs, including reasonable attorney's fees.

## COUNT IV – VICARIOUS LIABILITY OF ZOO

35. Oppenheimer re-alleges and incorporates paragraphs 1 – 34 above as if recited *verbatim*.

36. Pleading further, but without waiver of the foregoing allegations, ZOO hired defendants Harley-Allen and Perfect Pitch to advertise, market, and/or otherwise promote its Zoo Tunes event on WSPA's Your Carolina television program wherein the infringing photograph first appeared.

37. Upon information and belief, ZOO provided Harley-Allen and Perfect Pitch with all the written and visual content utilized to advertise and/or promote the Zoo Tunes event, including but not limited to the Facebook photo album and/or Google Drive links copied in the November 4, 2016 email communication to the WSPA employee. Further, ZOO – through its agents Harley-Allen and Perfect Pitch – agreed to provide WSPA with the photograph and ad copy that would ultimately be broadcasted on the Your Carolina television program, and then later displayed online at wspa.com.  Upon information and belief, at the time of the infringing acts, ZOO controlled nearly all decisions of Harley-Allen, Perfect Pitch, and WSPA with regard to the advertising, marketing, and promotion of the Zoo Tunes event on the Your Carolina television

program and subsequently on wspa.com. ZOO, therefore, had the right and ability to supervise and/or control the infringing conduct of the other Defendants, and/or to stop the infringements once they began. By allowing one or more of the other Defendants to broadcast and subsequently display the infringing work on television and online without license or authorization from Oppenheimer in order to advertise, market, and/or promote their Zoo Tunes event, ZOO breached its duty to supervise and/or control the conduct of the other Defendants.

38. Additionally, through Harley-Allen and Perfect Pitch, Zoo sought-out WSPA to publish the infringing work in order to advertise and promote the Zoo Tunes event, sell tickets, and generally benefit financially as a result. As such, Zoo had an obvious and direct financial interest in the infringing activities of the other Defendants.

39. Alternatively, upon information and belief, ZOO – through its agent Harley-Allen and Perfect Pitch – directed WSPA's employee to locate and access Oppenheimer's Work at http://www.performanceimpressions.com, download the work, and then use it in the television broadcast and online.

40. Accordingly, Zoo is liable to Oppenheimer as a joint infringer, or is otherwise vicariously liable for the infringing activities of the other Defendants.

## COUNT V - CONTRIBUTORY COPYRIGHT INFRINGEMENT

41. Oppenheimer re-alleges and incorporates paragraphs 1 – 40 above as if recited *verbatim*.

42. Alternatively, ZOO has intentionally induced, encouraged, caused, enabled, facilitated, and/or materially contributed to the infringements complained of herein by directly and/or indirectly promoting the infringements, and/or having refused to exercise their right and/or ability to stop the infringement(s) once they began.

43. ZOO hired defendants Harley-Allen and Perfect Pitch to advertise, market, or otherwise promote its Zoo Tunes event on WSPA's "Your Carolina" television program on which the infringing photograph aired.

44. Upon information and belief, ZOO provided Harley-Allen and Perfect Pitch with written and visual content utilized to advertise and/or promote the Zoo Tunes event, including but not limited to the Facebook photo album and/or Google Drive links copied in the November 4, 2016 email communication to the WSPA employee. Further, ZOO – through its agents Harley-Allen and Perfect Pitch – agreed to provide WSPA with the photograph and ad copy that would ultimately be broadcasted on the Your Carolina television program, and then later displayed online at wspa.com. Upon information and belief, at the time of the infringing acts, ZOO controlled, or had the ability to control, the actions of Harley-Allen, Perfect Pitch, and WSPA with regard to the advertising, marketing, and/or promotion of the Zoo Tunes event on the Your Carolina television program, and subsequently on wspa.com. ZOO had the right and ability to supervise and/or control the infringing conduct of the other Defendants, and/or to stop the infringements once they began, but either refused to exercise such rights, or chose to remain willfully blind to the infringing activities, all while creating an environment which encouraged and enable the same. Additionally, Zoo had an obvious and direct financial interest in the infringing activities of the other Defendants.

45. Alternatively, upon information and belief, ZOO – through its agent Harley-Allen and Perfect Pitch – directed WSPA's employee to locate and access Oppenheimer's Work at http://www.performanceimpressions.com, download the work, and then use it in the television broadcast and online.

46. Accordingly, ZOO is liable to Oppenheimer as a contributory infringer for the infringing activities of the other Defendants.

## CAUSATION/DAMAGES

47. As a result of Infringers' above-described acts of copyright infringement, Oppenheimer has sustained actual damages in an amount not yet ascertained, but which discovery will illuminate. Such actual damages include, but are not limited to, lost profits and/or lost licensing revenue, disgorgement of the infringers' profits attributable to their infringements, statutory damages including for the DMCA violations; research time tracking-down and documenting the infringements, research time tracking-down and emailing and calling the infringers, and attorneys' and paralegals' time trying to amicably resolve the matter, and for the drafting, filing and service of this complaint, citations, waivers of service and related documents.

## RELIEF REQUESTED

48. Oppenheimer demands an accounting of Defendants' activities in connection with their infringements of his copyrights in and to the above-described and attached Work, as well as disgorgement of profits attributable to the infringing activities, as well as all other benefits realized by Defendants through their infringing activities.

49. Oppenheimer is entitled to recover and therefore seeks recovery of actual damages, plus all of Defendants' profits attributable to the infringements.

50. Alternatively, and at Oppenheimer's post-verdict election, because the image was registered prior to Defendants' infringements, Oppenheimer is entitled to and seeks recovery of statutory damages up to but not exceeding $150,000 (One Hundred Fifty Thousand Dollars), plus costs, including costs and Lodestar attorney's fees, pursuant to 17 U.S.C. § 504(c) and §505.

51. Oppenheimer is also entitled to recover, and therefore seeks the recovery of actual damages plus any additional profits and/or benefits realized by Defendants through their violations of the DMCA pursuant to 17 U.S.C. §1203(c)(2).

52. Alternative to actual damages under the DMCA, at Oppenheimer's post-verdict election, and pursuant to 17 U.S.C. §1203(c)(3)(B), Oppenheimer is entitled to and seeks to recover statutory damages under the DMCA not less than $2,500 and not exceeding $25,000 for each act committed by Defendants in violation of 17 U.S.C. §1202, plus Oppenheimer's Lodestar attorney's fees, pursuant to 17 U.S.C. §1203(b)(5).

**Oppenheimer DEMANDS JUDGMENT:**

53. That Defendants, their agents, employees and/or servants be enjoined *pendente lite* and permanently from infringing Oppenheimer's copyrights in any manner whatsoever, and from publishing through any visual media, and from selling, marketing or otherwise distributing any of his images, and from using his images in sales, marketing, and/or advertising;

54. That Defendants be required to deliver-up, under oath, for impounding during the pendency of this action, and for destruction thereafter, all images which infringe Oppenheimer's copyrights, and all prints, film negatives, magnetic tapes, digitally scanned and/or stored images, and all other articles by means of which such infringing copies may be reproduced, which are in the possession or under the direct or indirect control of Infringers;

55. That Defendants provide an accounting of all gains, profits and advantages derived by him as a result of the willful and unlawful acts of copyright infringement above described;

56. That Defendants be ordered to pay over to Oppenheimer his actual damages sustained, in addition to all their profits attributable to the infringements, and which are not taken

14

into account in computing Oppenheimer's actual damages incurred as a result of Defendant's copyright infringements described herein, pursuant to 17 U.S.C. § 504(b);

57. In the alternative, and at Oppenheimer's election after verdict, that Defendants be ordered to pay maximum statutory damages in the amount $150,000 for the Work infringed pursuant to 17 U.S.C. § 504(c), or such other amount as the jury may deem appropriate;

58. That in addition to the above, Defendants be ordered to pay over to Oppenheimer actual damages for each DMCA violation, plus all of Defendants' profits that are attributable to each such violation – which are not taken into account in computing Oppenheimer's actual damages – pursuant to 17 U.S.C. § 1203(c)(2);

59. That alternative to actual damages under the DMCA, and at Oppenheimer's election after verdict, Defendants be: 1) ordered to pay to Oppenheimer the maximum statutory damages pursuant to 17 U.S.C. § 1203(c)(3)(B) for each violation; and  2) permanently enjoined and prohibited from employing, altering, cropping, mutilating or otherwise utilizing Oppenheimer's copyrighted images or their copyright management information in any manner or media whatsoever, pursuant to 17 U.S.C. § 1203(b)(1);

60. That Defendants be ordered to pay to Oppenheimer all of his Lodestar costs including reasonable attorney's fees pursuant to 17 U.S.C. § 504(c) and §505 and 17 U.S.C. §1203(b)(5); *and*

61. That Oppenheimer recover judgment for such other and further relief as this court deems just and proper, including maximum pre and post judgment interest on all sums due.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES.**

**Date: June 11, 2020**               ALLEN LEGAL

                                      By:    /s **Samuel K. Allen**
                                             SC Bar 68552

                    Federal ID No. 7744
                    1417 Ashley Road
                    Charleston, South Carolina   29407
                    Ofc:  843-481-4000
                    sam@allenlegal.net


                    **LEJUNE LAW FIRM**

By:

                    **Dana A. LeJune**
                    Texas Bar: 12188250
                    NC Bar: 49025
                    **Scott M. Francis**
                    Texas Bar: 24088795
                    1225 North Loop W
                    Suite 825
                    Houston, Texas  77008
                    713.942.9898 Phone
                    713.942.9899 Facsimile
                    dlejune@triallawyers.net
                    *Pro Hac Vice*

                    **NORTH CAROLINA OFFICE:**
                    7 Orchard Street
                    Suite 200
                    Asheville, NC 28801
                    828-774-5800 Office
                    713-858-3058 Cellular
                    (Covid19 Best Number)
                    Attorneys for Plaintiff